## Ellison v. Commonwealth.

(Decided May 8, 1934.)

MONTGOMERY & MONTGOMERY, E. C. MOORE, and IRA L. PITTMAN for appellant.

BAILEY P. WOOTTON, Attorney General, and DAVID C. WALLS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

The appeal by Clarence Ellison is from a judgment of conviction and a sentence of ten years in prison for manslaughter.

When the commonwealth closed, it had established that Ellison was a merchant in the village of Gilpin, Casey county; Sherman Blevins had been killed by a stab wound in the chest late Sunday afternoon, October 23, 1932, in front of his store; about a year before Ellison had sued Blevins on a store account; about that time Ellison had said he was not afraid of Blevins and did not guess Blevins was afraid of him, but he would get him some day (this by a witness who had also had trouble over a store account and who was an intimate associate of Blevins), and that on another occasion

when Blevins had been appointed constable Ellison said he was the wrong man, and suggested to the witness that he had better get out of the country as Blevins would be arresting all the men and boys for drinking, and "in little or no time somebody will kill him," and "more than that, I will if I can get a half a chance." Another witness related that Ellison had cursed Blevins about this time, and said if he was not careful somebody was going to put him out of business. About fifteen months before Blevins was killed a witness saw a hunting knife or dirk on Ellison's store counter near the cash drawer. Shortly before he was killed, the deceased had been appointed a road overseer and had petitioned for a change in the county road which would have gone through the defendant's property, and to this he was objecting. When the sheriff went to the defendant's home shortly after Blevins had been killed, he showed the officer where he had been struck, and said, "I had to do what I done in self-defense." A deputy sheriff testified that on the way to the county seat Ellison said "a little something about the killing and said he didn't do it." The next day at the jail, when the deputy sheriff asked him what was the matter with his face, Ellison showed him some bruises, told him that Blevins had beat him up, and, when he was told that Blevins was dead, he replied, "I don't know who done it." This was all the evidence. Not a witness had stated that the defendant had assaulted the man, nor was any circumstance related to identify him with the killing. There are only the defendant's statements that he had killed the man in self-defense and his denial that he had killed him.

The defendant proved by a number of substantial witnesses that the deceased had threatened him on a number of occasions and some of these threats had been communicated to him. The effect of the evidence of this class was that the defendant was afraid of Blevins and avoided trouble all along. During the controversy over the store account and upon two later occasions Blevins had gone to the defendant's place and threatened him directly and endeavored to provoke a fight which Ellison had avoided. Others than the defendant testified to these things also. Ellison's residence is a short distance back from the street or road, and his store is in front on the edge of the street. In front of it were gasoline pumps. On that Sunday afternoon while he

was at the barn feeding and milking he heard some one calling at the gasoline pumps and went down to wait upon him without knowing who it was. He was surprised to see it was Blevins, who had not done any business with him since the dispute over the account about a year before. When he asked Blevins what kind of gas he wanted, Blevins replied that he did not want any gas, but wanted him, and cursed him. It appears that he had been there that morning. Ellison testified he stated he would have to get his keys to the pump, which was an excuse to get away, and, as he started back into the store, Blevins grabbed him and viciously beat and kicked him. He knocked him across a bench in front of the building, and, in the scuffle while on the bench or on the ground with Blevins on top of him, Ellison got his pocket-knife out and stabbed Blevins in the chest. Neighbors came and separated the men. Ellison went into the store or was taken in, and Blevins went to his automobile parked a few steps away and got his pistol. He started towards the door of the building, into which Ellison had gone, with his pistol drawn. Jess Larkin asked him to surrender the weapon, but he would not, and sank to the ground and died in a few minutes from the knife wound. Several witnesses corroborate the defendant in his claim of a clear case of self-defense. Indeed, they made out a stronger case for the defendant than he did for himself. There is nothing to the contrary. A physician testified that he examined the defendant that night, and he was then in a semiconscious condition or somewhat stunned and very bloody. He had a deep cut over his eye, apparently made with a blunt instrument; had a broken rib and bruises on his face and chest.

It is only doubtful whether a directed verdict of justifiable homicide should not have been given. It is not doubtful but clear that the verdict is flagrantly against the evidence. One cannot read this record without experiencing a shock at the result. In such instances, it is the duty of this court to reverse the judgment and direct a new trial. Other points made on the appeal are not decided.

Judgment reversed.